**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JUAN CARLOS MARTINEZ
    CANALES,

           *Petitioner*,

    v.

MARKWAYNE MULLIN,
    **in his official capacity as**
    **Secretary, U.S. Department of**
    **Homeland Security;**

JUDITH ALMODOVAR,
    **in her official capacity as Acting**
    **Field Office Director, New York**
    **City Field Office, U.S.**
    **Immigration and Customs**
    **Enforcement;**

TODD BLANCHE,
    **in his official capacity as Acting**
    **Attorney General, U.S.**
    **Department of Justice;**

RAUL MALDONADO,
    **in his official capacity as the**
    **Metropolitan Detention Center**
    **Warden.**

           *Respondents.*

Civil Action No.   26-cv-3118

**VERIFIED PETITION FOR**
**WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2241**

## INTRODUCTION

1. On March 3, 2026, U.S. Immigration and Customs Enforcement ("ICE") officers arrested twenty-four-year-old Juan Carlos Martinez Canales in a random traffic stop in Hempstead, New York, while he was on his way to work. On information and belief, the ICE officers had no warrant for his arrest nor probable cause to stop the car. The ICE officers did not even know who he was before detaining him, since they asked for his identification and only learned his identity after stopping the car. Instead, Mr. Martinez Canales's arrest appears to be a pattern of ICE profiling and arresting Latino individuals, particularly in and around Long Island.

2. ICE's original justification for detaining Mr. Martinez Canales was that he was subject to mandatory detention under an immigration statute that does not apply to him, 8 U.S.C. § 1225(b)(2)—an interpretation that has now been rejected by the Second Circuit and by the vast majority of courts in this District.

3. Mr. Martinez Canales has now been detained for over two months, following ICE's unlawful decision to detain him pursuant to 8 U.S.C. § 1225(b)(2) and failure to conduct any individualized, pre-deprivation custody determination.

4. Courts in this and neighboring districts have granted petitions nearly identical to that of Mr. Martinez Canales, finding that detention without an individualized custody determination violates due process and that release is the appropriate remedy. *See, e.g.*, *Singh v. Blanche*, No. 2:26-CV-02538 (NJC), 2026 WL 1239057, at *4 (E.D.N.Y. May 6, 2026) ("ICE's detention of [petitioner] . . . was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2)"); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319 (E.D.N.Y. 2025),

1

*appeal dismissed,* No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026) (petitioner's "detention was unlawful from its inception because ICE detained her under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)"); *Inestroza Carbajal v. Frazier et al.,* No. 26-CV-2778-SJB, 2026 WL 1309265, at *2 (E.D.N.Y. May 12, 2026); *Garcia Lanza v. Noem*, No. 26-0029 (GRB), ---F. Supp. 3d ---, 2026 WL 585130, at *7, *11 (E.D.N.Y. Mar. 3, 2026); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491–92, 495 (E.D.N.Y. 2025); *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 497–98 (E.D.N.Y. 2025); *Arango v. Genalo*, No. 25-CV-6720 (RER), 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) (ordering immediate release where "there is no indication in the record that a custody determination was made before or contemporaneous with [] arrest [under 1226(a)"); *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025); *Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *4–5 (S.D.N.Y. Nov. 14, 2025).

5.    Mr. Martinez Canales seeks the same relief here: immediate and unconditional release from detention or, at minimum, a bond hearing at which the government bears the burden of proof to justify his ongoing detention by clear and convincing evidence. Further, he seeks a stay of his transfer from the district and an order to show cause why he should not be released immediately.

6.    Alternatively, Mr. Martinez Canales respectfully asks the Court to issue an order to show cause and hold a hearing pursuant to 28 U.S.C. § 2243 on the expedited basis set forth in the statute, during which the Court should (1) find that Mr. Martinez Canales's detention violates federal law and (2) order his immediate release.

**PARTIES**

7.   Petitioner Mr. Martinez Canales is a twenty-four-year-old resident of New York State. He has lived on Long Island since he was approximately seventeen years old. ICE arrested him on or about March 3, 2026. He is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. *See* **Exhibit A**, Online Detainee Locator.

8.   Respondent Markwayne Mullin is named in his official capacity as the Secretary of the United States Department of Homeland Security ("DHS"). In this capacity, he is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a), routinely transacts business in the Eastern District of New York, and is legally responsible for the pursuit of Petitioner's detention and removal. As such, he is the legal custodian of Petitioner. Respondent Mullin's office is located at the United States Department of Homeland Security, Washington, DC 20528.

9.   Respondent Judith Almodovar is named in her official capacity as the Acting Field Office Director of the New York Field Office for Immigration and Customs Enforcement within the United States Department of Homeland Security. In this capacity, she is responsible for the administration of immigration laws and the execution of detention and removal determinations. As such, she is the legal custodian of Petitioner. Respondent Almodovar's office is located at 26 Federal Plaza, New York, NY 10278.

10.  Respondent Todd Blanche is named in his official capacity as the Acting Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by EOIR pursuant to 8 U.S.C. § 1103(g). He routinely transacts business in the Eastern District of New York and is legally responsible for administering Petitioner's removal and bond proceedings and the standards used in those

3

proceedings. As such, he is the legal custodian of Petitioner. Respondent Blanche's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

11. Respondent Raul Maldonado Jr. is named in his official capacity as the warden of MDC. In this capacity, he is responsible for the administration of MDC. As such, he is the legal custodian of Petitioner. Respondent Maldonado's office is located at 80 29th Street, Brooklyn, NY 11232.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause); and 28 U.S.C. § 1651 (All Writs Act).

13. The federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness of their detention by DHS. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

14. Venue is proper in this district under 28 U.S.C. § 2241 and § 1391. *See Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 493–500 (1973). Mr. Martinez Canales is incarcerated at MDC, within this district; his immigration proceedings are venued in New York City; the ICE office that controls the location of his detention is based in New York City; and a substantial part of the events giving rise to the claims and relevant facts occurred in this district.

## EXHAUSTION

15. Exhaustion in immigration detention cases is considered a prudential concern, rather than a statutory requirement. *See, e.g.*, *Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL

4

2829434, at *3 (E.D.N.Y. Oct. 5, 2025); *J.U.*, 805 F. Supp. 3d at 489–90; *see also*

*Quintanilla v. Decker*, No. 21-CV-417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22,

2021); *Joseph v. Decker*, No. 18-CV-2640 (RA), 2018 WL 6075067, at *5–6 (S.D.N.Y.

Nov. 21, 2018).

16. Courts in this and neighboring districts "have excused exhaustion when considering whether '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *J.U.*, 805 F. Supp. 3d at 489 (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

17. Mr. Martinez Canales's case satisfies all four requirements.

18. As to the first exception, "there are no administrative remedies that could provide Petitioner with the relief he seeks." *J.U.*, 805 F. Supp. 3d at 489. Like the petitioner in *J.U.*, Mr. Martinez Canales "asserts that the original constitutional transgression occurred when ICE detained him . . . without first making an individualized determination that he posed a flight risk or danger to the community, or any other type of process and notice that would justify the detention." *Id.* Consequently, "the only cure to that unlawful detention is the vacatur of the detention—that is, the release of Petitioner from ICE custody." *Id.* at 489–90. Because ICE failed to conduct any individualized review prior to Mr. Martinez Canales's detention, "a bond hearing for a post-deprivation review is wholly inadequate to remedy that [initial] unlawful detention." *Id.* at 490.

5

19. Second, should he remain detained, Mr. Martinez Canales faces irreparable injury: continued unlawful detention; separation from his community, including his partner; and loss of income.

20. Third, recourse to the agency would be futile. A bond hearing now would not remedy the initial, and ongoing, violation of Mr. Martinez Canales's due process rights. *See, e.g.*, *Barbosa da Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *22 (2d Cir. Apr. 28, 2026) (detention "require[s] a legitimate rationale, which the government has not attempted to articulate with respect to noncitizens like Petitioner"). Mr. Martinez Canales "is not required to exhaust a process that was deficient from the outset." *Gopie*, 2025 WL 3167130, at *3.

21. Finally, Mr. Martinez Canales's claim "raises a substantial constitutional question that cannot be properly adjudicated administratively." *J.U.*, 805 F. Supp. 3d at 490; *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497–98 (S.D.N.Y. 2025). Like the petitioner in *J.U.*, Mr. Martinez Canales "contends that his continued detention . . . without DHS first making an individualized determination constitutes a violation of his due process rights." 805 F. Supp. 3d at 490. Because "neither an immigration judge nor the [Board of Immigration Appeals ("BIA")] is positioned to properly adjudicate such a claim," Mr. Martinez Canales should be excused from exhausting administrative remedies before seeking relief from this court. *Id.*; *see also Artiga*, 2025 WL 2829434, at *4; *Lopez Benitez*, 795 F. Supp. 3d at 497–98.

22. Under the four criteria set forth in *Beharry*, administrative exhaustion in Mr. Martinez Canales's case would prove futile and should not be required.

## STATEMENT OF FACTS

*Mr. Martinez Canales Sought Safety in the United States as a Minor and Settled on Long Island, NY*

23. Mr. Martinez Canales is a young man from Honduras. As a teenage boy, he feared forced recruitment by the gangs that menace Honduran society and who threaten Honduran young people—particularly boys—that they must join the gangs or be killed. Rather than join and cause harm to others, Mr. Martinez Canales fled to the United States in early 2019, when he was seventeen years old.

24. When Mr. Martinez Canales came to the United States, he was apprehended by Department of Homeland Security ("DHS") officers. DHS officers determined that he was an unaccompanied noncitizen child within the meaning of the Homeland Security Act, 6 U.S.C. § 279(g)(2), because he was under eighteen, had no immigration status in the United States, and did not have a parent or legal guardian in the United States. Following Mr. Martinez Canales's apprehension, DHS officers referred him to the custody of the Office of Refugee Resettlement ("ORR"), pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232(b)(1).

25. ORR later released Mr. Martinez Canales to a relative on Long Island who sponsored him. Under ORR practice and regulations, this meant that the relative had been vetted and approved as a sponsor, and ORR had determined that Mr. Martinez Canales was not a danger to himself or others. *See* 8 C.F.R. §§ 410.1200; 410.1205(f);[1] *R.A.R.R. v.*

---

[1] The ORR regulations, while not promulgated until 2024, codified existing policies and requirements as to the "placement, care, and services provided to unaccompanied children in Federal custody by reason of their immigration status and referred to ORR." *Unaccompanied Children Program Foundational Rule*, 89 Fed. Reg. 34384-01, 34385 (Apr. 30, 2024).

7

*Almodovar*, No. 25-CV-6597 (PKC), 2026 WL 323040, at \*1 (E.D.N.Y. Feb. 6, 2026).

26. Mr. Martinez Canales attended high school on Long Island until he had to begin working full time to support himself. Since he was approximately seventeen or eighteen years old, Mr. Martinez Canales has been gainfully employed. He currently works as a landscaper. He has been with his partner for several years and has good relationships with her two children.

27. Mr. Martinez Canales was placed in removal proceedings before the immigration court as an unaccompanied child. *See* **Exhibit B**, Notice to Appear (handwritten "UC" indicating Mr. Martinez Canales was an unaccompanied child). In 2023, his immigration court case was taken off the active docket. His case was recalendered and became active again in 2026.

28. On information and belief, Mr. Martinez Canales has no criminal convictions in New York or anywhere in the world.

29. In September 2025, Mr. Martinez Canales and a friend were out walking when two men approached and suddenly attacked him. They hit and beat Mr. Martinez Canales on his face and body, stabbed him in his side, and cut him across his chest, before stealing his wallet and running away. Mr. Martinez Canales has experienced persistent back pain and trouble breathing as a result of the attack.

*ICE Detained Mr. Martinez Canales without any Individualized Determination, and He Has Been in Detention since March 3, 2026*

30. On the morning of March 3, 2026, Mr. Martinez Canales was in the car with his boss and a coworker on the way to do landscaping work in Hempstead, New York. About ten ICE officers, driving in four unmarked cars, pulled them over in a random traffic stop and began

hitting the car window. The ICE officers did not give any reason for the stop and did not accuse them of disobeying any traffic law; the car was not speeding, and Mr. Martinez Canales, his coworker, and his boss were wearing seatbelts. The ICE officers asked his boss for his license and registration and then asked Mr. Martinez Canales and his coworker for identification. They then arrested him and his coworker, but not his boss. ICE never presented Mr. Martinez Canales with a warrant before arresting him or explained why he was being detained. Later, the ICE officers gave him some paperwork about his arrest, but that paperwork did not give any reason for the arrest nor list any charges.

31. Nothing had changed about Mr. Martinez Canales's circumstances before his arrest in March. Upon information and belief, he has no criminal convictions. There is no final order of removal against him.

32. Instead, Mr. Martinez Canales's arrest fits within a larger pattern of ICE racially profiling and arresting Latino workers, particularly on Long Island. *See, e.g.*, *Benitez v. DHS*, 2:26-cv-02082-JMW, ECF #1 (E.D.N.Y. April 8, 2026) (complaint alleging racial profiling in arrests of Latino and Black individuals in New York state and the widespread use of warrantless arrests in violation of the Fourth Amendment, Fifth Amendment, and the INA); N.Y. Times, *Trump's Immigration Crackdown Pervades Long Island Suburbs* (April 22, 2026), https://www.nytimes.com/2026/04/22/nyregion/ice-arrests-long-island.html; CBS News, *Video Allegedly Shows ICE Agents Detaining Hispanic U.S. Citizen on Long Island* (June 12, 2025), https://www.cbsnews.com/newyork/news/ice-detains-us-citizen-long-island-video/; The Long Island Advocate, *Fear on Long Island Surges as ICE Raids Rise* (December 22, 2025), https://longislandadvocate.com/fear-on-long-island-surges-as-ice-raids-rise/.

33. After the arrest, Mr. Martinez Canales and his coworker were taken to the Nassau County Jail for approximately three days. DHS later transferred him to MDC. Since approximately March 6, 2026, Mr. Martinez Canales has been detained at the MDC, "a facility so notoriously plagued with issues arising from overcrowding and underfunding that judges in this Circuit have reduced or modified sentences for convicted criminals based on the conditions of confinement there." *Alfaro v. Mullin*, No. 26-0766 (GRB), 2026 WL 734348, at *4 (E.D.N.Y. Mar. 16, 2026). The food Mr. Martinez Canales has received is inedible. The facility is often very cold, and MDC does not provide adequate jackets or blankets. For several days following May 10, 2026, Mr. Martinez Canales and other detainees were not even allowed to go outside for any recreation or fresh air. In addition, Mr. Martinez Canales has been separated from his partner for almost three months, and he has not been able to earn any income to support himself.

## LEGAL FRAMEWORK

### I. Immigration Detention Framework and Bond Hearing Eligibility

34. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

35. For decades, the immigration system has realized this balance through three mutually exclusive detention statutes codified in the INA.

36. First, at the border, "applicants for admission" who are "seeking admission" into the United States are placed into expedited removal proceedings and subject to detention without a bond hearing under 8 U.S.C. § 1225(b)(2).[2] *See Jennings v. Rodriguez*, 583 U.S.

---

[2] Separately, there is also a limited subset of individuals in and around the border who may be placed into the expedited removal process; who must be provided with a protection screening if they express a fear of persecution or intent to apply for asylum; and are subject to mandatory

281, 287 (2018) (describing § 1225 as relating to "borders and ports of entry"). These individuals may request release through humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).

37. Second, individuals arrested inside the United States are generally placed into removal proceedings under 8 U.S.C. § 1229a, during which an immigration judge ("IJ")—and later potentially the BIA, subject to further review by the United States Court of Appeals—will decide whether the person should be removed. During these proceedings, a noncitizen may apply for various forms of relief from deportation, such as asylum, withholding of removal, cancellation of removal, and adjustment of status. This process can take months or even years. Any detention of individuals arrested inside the United States and placed in removal proceedings—including individuals charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), which applies to noncitizens present in the United States without being admitted or paroled—is subject to 8 U.S.C. § 1226. *See Jennings*, 583 U.S. at 288–89 (describing § 1226 detention as relating to people "inside the United States" and "present in the country"). Most of these individuals are eligible for release on bond under § 1226(a), and they are consequently entitled to a custody redetermination hearing (often colloquially referred to as a "bond hearing") before an IJ to decide whether they should be detained or released pending the adjudication of their removal proceedings. *See* 8 C.F.R. §§ 1003.19(a), 236.1(d), 1236.1(d); *see also Barbosa da Cunha*, 2026 WL 1146044, at *5.

38. Prior to or contemporaneous with any arrest pursuant to 8 U.S.C. § 1226, however, DHS must conduct an individualized review to determine whether detention is warranted. *See,*

---

detention under 8 U.S.C. § 1225(b)(1). *See Make the Road N.Y. v. Noem*, 805 F. Supp. 3d 139, 148–49 (D.D.C. 2025).

*e.g.*, *Arango*, 2025 WL 3637500, at *2. "*[B]efore* the Government may exercise such discretion to detain a person, Section 1226(a) and 8 C.F.R. 1236.1(c)(8) require ICE officials to make an individualized custody determination." *Gopie*, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (emphasis in original). A noncitizen who does not demonstrate to the satisfaction of the DHS officer that they are neither a danger to the community nor a flight risk may request review of that custody determination and seek bond before an immigration judge ("IJ"). *See* 8 C.F.R. §§ 1003.19(a); 236.1(d); 1236.1(d)(1).

39. The Supreme Court and the Second Circuit have recognized only one exception to this constitutional requirement for a bond hearing for § 1226 detainees. In 2003, in *Demore v. Kim*, the Court held that 8 U.S.C. § 1226(c) contemplates a narrow category of people who can be subjected to mandatory detention for a brief period, provided that they have conceded removability and have been convicted of certain crimes after having been afforded the due process required for criminal adjudication. 538 U.S. at 513.

40. Section 1226 was most recently amended in 2025 by the Laken Riley Act ("LRA"). Pub. L. No.119-1, 139 Stat. 3 (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)). Congress passed the LRA to expand mandatory detention under § 1226(c), the statute that subjects noncitizens convicted of certain crimes to detention without initial bond eligibility. *See id*. The LRA amendments require detention for noncitizens who have been: (1) charged as inadmissible under § 1182(a)(6)(A) (the inadmissibility ground for noncitizens "present in the United States without being admitted or paroled"), § 1182(a)(6)(C) (misrepresentation), or § 1182(a)(7) (lacking valid documentation); *and* (2) arrested for, charged with, or convicted of certain crimes. *See id.* The LRA therefore expressly includes people who

entered the country without inspection within the scope of § 1226 detention. *Id.*; *see also Sampiao v. Hyde*, 799 F. Supp. 3d 14, 28 (D. Mass. 2025); *Romero v. Hyde*, 795 F. Supp. 3d 271, 286–87 (D. Mass. 2025).

41.  Last, the INA provides for detention of noncitizens who are subject to final orders of removal. *See* 8 U.S.C. § 1231(a)–(b). A removal order is not final until the BIA has dismissed any appeal of an IJ's decision. 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. § 1241.1(a).

42.  This system—in which people arrested inside the United States are generally eligible for a bond hearing and release during immigration proceedings—has existed in essentially this form since Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, § 3003, 110 Stat. 3009-546, 3009-585 to 3009-587.

## II.    Noncitizens' Procedural Due Process Rights

43.  The Due Process Clause of the Fifth Amendment entitles noncitizens to due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). This constitutional protection applies to noncitizens in the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas,* 533 U.S. at 693.

44.  Stated simply, "while [DHS] might want to enforce this country's immigration laws efficiently, it cannot do that at the expense of fairness and due process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) (citing *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954)).

45.  Changes in presidential administrations do not and cannot modify the procedural due process protections afforded by the Constitution. A "new administration can change the rules, but it cannot change them and make up new rules as it goes along when the new rules

13

abridge constitutional rights." *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 149 (W.D.N.Y. 2025).

46. In the context of immigration detention due process claims, the Second Circuit has applied the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what due process requires. *See Black v. Decker*, 103 F.4th 133, 155–56 (2d Cir. 2024); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020).

47. These factors are: (i) "the private interest that will be affected by the official action"; (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

48. In light of a noncitizen's due process rights and the procedural rights conferred by § 1226(a) and its implementing regulations, a decision to detain a noncitizen ***requires an individualized determination*** as to the noncitizen's risk of flight and danger to the community, before or contemporaneous with the arrest. *See, e.g.*, *Minarcaja Concha v. Lyons*, No. 2:25-CV-6695 (NJC), --- F. Supp. 3d ---, 2026 WL 215417, at *17–18 (E.D.N.Y. Jan. 28, 2026); *Rodriguez-Acurio*, 811 F. Supp. 3d at 316–18; *Gopie*, 2025 WL 3167130, at *2; *Hyppolite*, 808 F. Supp. 3d at 491–92; *Artiga*, 2025 WL 2829434, at *9; *J.U.*, 805 F. Supp. 3d at 497–98; *see also, e.g.*, *Kelly v. Almodovar*, No. 25-CV-6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025); *Lopez Benitez*, 795 F. Supp. 3d at 492–96; *Velesaca v. Decker*, 458 F. Supp. 3d 224, 235, 241 (S.D.N.Y. 2020); *Singh v.*

14

*Maldonado*, No. 26-CV-00019 (OEM), 2026 WL 233216, at *9–10 (E.D.N.Y. Jan. 29, 2026).

49. Under the *Mathews* rubric, freedom from imprisonment, physical restraint, or other forms of government custody is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Lopez Benitez*, 795 F. Supp. 3d at 492 ("[Petitioner] invokes 'the most significant liberty interest there is—the interest in being free from imprisonment.'" (quoting *Velasco Lopez*, 978 F.3d at 851)); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) (finding that noncitizens in immigration custody had arguably an even greater liberty interest in remaining out of detention than criminal parolees who required due process protection).

50. With respect to the second *Mathews* factor, given the strong liberty interest at stake, the Fifth Amendment's guarantee of due process requires at least some notice and an opportunity to be heard before a person can be placed in immigration detention. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025). Further, due process requires that "notice must be afforded within a reasonable time and in such manner as will allow [noncitizens] to actually seek . . . relief[.]" *Id.*

51. For the third *Mathews* factor, "the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate government purpose." *Velasco Lopez*, 978 F.3d at 854. The recognized government interests in immigration detention are "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Absent evidence in the record that a noncitizen is dangerous or a flight risk, district courts have held that the government cannot demonstrate a significant interest in their detention. *See, e.g.*, *Singh*,

15

2026 WL 233216, at *9; *Minarcaja Concha*, 2026 WL 215417, at *18; *Rodriguez-Acurio*, 811 F. Supp. 3d at 318–19; *Hyppolite*, 808 F. Supp. 3d at 492; *Artiga*, 2025 WL 2829434, at *9; *J.U.*, 805 F. Supp. 3d at 498; *see also, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 495–96; *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218–19 (S.D.N.Y. 2025).

52. Recent decisions by federal courts in this and neighboring districts confirm that due process requires the government to make individualized determinations to detain noncitizens and give them notice and a meaningful opportunity to be heard when challenging their detention. *See Iza by Iza v. Larocco*, 814 F. Supp. 3d 357, 364 (E.D.N.Y. 2026) ("Respondents' detention of Mr. Iza without providing any notice or opportunity to be heard before a DHS officer or immigration judge is a violation of his right to procedural due process."); *Y-C- v. Genalo*, No. 25-cv-06558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) ("The Court therefore concludes, consistent with the view of many other district courts in analogous cases, that the 'ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to be heard violates his due process rights.'" (quoting *Ye v. Maldonado*, No. 25-CV-6417 (AMD), 2025 WL 3521298, at *8 (Dec. 8, 2025))); *Rodriguez-Acurio*, 811 F. Supp. 3d at 281; *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 404–05 (E.D.N.Y. 2025); *Hyppolite*, 808 F. Supp. 3d at 484; *see also Lopez Benitez*, 795 F. Supp. 3d at 496 ("Respondents' ongoing detention of [Mr. Lopez Benitez] with no process at all, much less prior notice, no showing of changed circumstances, or opportunity to respond, violates his due process rights."); *Cuy Comes v. DeLeon*, No. 25-CV-9283 (AT), 2025 WL 3206491, at *5 (S.D.N.Y. Nov. 14, 2025).

53. Further, if a noncitizen does not receive individualized consideration pre-deprivation, his due process rights are irrevocably violated, and no amount of process provided post-detention can remedy that violation. *See, e.g.*, *J.U.*, 805 F. Supp. 3d at 490 ("ICE's detention of Petitioner did not comport with the implementing regulations and § 1226(a); thus, a bond hearing for post-deprivation review is wholly inadequate to remedy that unlawful detention."); *Rodriguez-Acurio*, 811 F. Supp. 3d at 319–20 ("In this situation a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out."); *Ye*, 2025 WL 3521298, at *9 ("Here, the constitutional violation the petitioner suffered—the government's failure to conduct any kind of individualized assessment before detaining him, failure to make any showing of changed circumstances, and failure to provide him with an opportunity to respond—renders any post-deprivation review by an immigration judge inadequate."); *Artiga*, 2025 WL 2829434, at *9 ("Given the absence of any deliberative process prior to or contemporaneous with the deprivation of Petitioner's liberty, formerly granted and approved by Respondents, a writ of habeas corpus is the only form of relief and the most appropriate remedy."); *see also, e.g.*, *O.F.B.*, 810 F. Supp. 3d at 405 ("The government's ongoing detention of the Petitioner, in the face of this complete failure of process, entitles him to immediate release."); *Crespo Tacuri v. Genalo*, No. 25-cv-06896 (NCM), 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) ("Respondents caused petitioner to be detained in violation of his due process rights. No relief short of petitioner's immediate release would be appropriate or sufficient in this case.").

17

54. As a result, courts in this district have ordered a noncitizen's immediate release where their pre-detention due process rights have been violated. *See, e.g.*, *Crespo Tacuri*, 2026 WL 35569, at \*7; *Y-C-*, 2025 WL 3653496, at \*7; *Ye*, 2025 WL 3521298, at \*9; *Rodriguez-Acurio*, 811 F. Supp. 3d at 320–21; *O.F.B.*, 810 F. Supp. 3d at 405; *Artiga*, 2025 WL 2829434, at \*9; *J.U.*, 805 F. Supp. 3d at 490, 498.

### III.   Timeline Pursuant to 28 U.S.C. § 2243

55. Courts considering petitions for writs of habeas corpus are directed to either issue a writ "forthwith," or to direct the respondent to show cause why the writ should not be granted within three days, or, with good cause, within twenty days. 28 U.S.C. § 2243.

56. Once the government has responded, the statute directs the Court to schedule a hearing on the petition "not more than five days after the return unless for good cause additional time is allowed." *Id.*

57. Because Mr. Martinez Canales's liberty remains heavily burdened during his continued detention, he asks the Court to adhere to the schedule set forth in § 2243 and order the Government to show cause within three days as to why the Petition should not be granted.

### ARGUMENT

### I.   Mr. Martinez Canales Is Not Subject to Mandatory Detention under 8 U.S.C. § 1225(b)(2).

58. ICE's initial detention of Mr. Martinez Canales in March 2026 was based on unlawfully classifying him as "seeking admission" under 8 U.S.C § 1225(b)(2), directly contravening the plain text of the detention statutory scheme.

59. His arrest, and ICE's claim that he was subject to mandatory detention, followed a DHS policy that rejected the well-established understanding of the INA's detention framework, reversed decades of practice, and implemented the unlawful practice of subjecting

18

noncitizens who entered the United States without inspection to mandatory detention across the country. *See Interim Guidance Regarding Detention Authority for Applications for Admission*, Immigr. Policy Tracking Project (July 8, 2025), https://immpolicytracking.org/policies/ice-issues-memo-eliminating-bond-hearings-for-undocumented-immigrants/#/tab-policy-documents. Pursuant to this policy, ICE's representatives in the immigration courts began to request that IJs misclassify individuals eligible for bond under § 1226(a) as mandatorily detained under § 1225(b)(2), and that IJs refuse to conduct bond hearings on that basis. In September 2025, the BIA ratified the DHS policy in a published decision holding that all noncitizens who entered the United States without admission or parole—that is, noncitizens charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i)—were "seeking admission" and therefore subject to § 1225(b)(2) detention and ineligible for bond. *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 217–20 (BIA 2025).

60. On April 28, 2026, the Second Circuit Court of Appeals rejected Respondents' interpretation of the Immigration and Nationality Act ("INA")'s detention statutes as contrary to the text of both §§ 1226(a) and 1225(b)(2)(A). In addition, the Second Circuit found Respondents' interpretation ran counter to the larger structure of the statute; to its legislative history and purpose; to nearly thirty years of prior agency practice; and that it would raise serious constitutional concerns. *See Barbosa da Cunha*, 2026 WL 1146044. The Eleventh and Sixth Circuits have recently agreed, rejecting Respondents' interpretation of their detention authority. *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *1 (6th Cir. May 11, 2026); *but see Buenrostro-Mendez v.*

19

*Bondi*, 166 F.4th 494 (5th Cir. Feb. 6, 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. Mar. 25, 2026).

61. Mr. Martinez Canales was arrested in the United States while on his way to work, not while "seeking admission."

62. As a result, he does not fall within the ambit of § 1225(b)(2). *Barbosa da Cunha*, 2026 WL 1146044, at *5. His detention is governed by § 1226(a), and his continued detention following his arrest under Respondents' § 1225(b)(2) theory is contrary to statutory authority and *ultra vires.*

63.  Due to this initial unlawful misclassification, Mr. Martinez Canales remains in detention with no end in sight. Without relief from this Court, he faces the prospect of months, or even years, in immigration custody, separated from his family and his community.

II. **Respondents Failed to Provide an Individualized Assessment when Detaining Mr. Martinez Canales in Violation of His Procedural Due Process Rights, Such That He Must Be Immediately Released.**

64. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V; *see also Reno*, 507 U.S. at 292; *Zadvydas*, 533 U.S. at 678; *Demore*, 538 U.S. at 510.

65. Mr. Martinez Canales was entitled to due process of law in advance of any detention.

66. Section 1226(a) authorizes the Government to detain a noncitizen, but *only after* conducting an individualized custody determination.  Such a determination must occur before, or contemporaneously with, the arrest and detention of a noncitizen; any subsequent determination violates the detainee's due process rights. *Arango*, 2025 WL 3637500, at *1–2; *Pastrana-Beltran v. Mullin*, No. 26-CV-2657 (RER), 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026).

67. The Second Circuit applies the *Mathews* factors to determine what process is due in the context of immigration detention, balancing: (i) "the private interest that will be affected by the official action"; (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez*, 978 F.3d at 851 (citing *Mathews*, 424 U.S. at 335).

68. Mr. Martinez Canales's private interests here are strong: he has been deprived of his liberty. Indeed, detention should be the "carefully limited exception" and implicates the "most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (internal quotation marks and citations omitted).

69. Further, Respondents detained Mr. Martinez Canales without notice, an opportunity to respond, or any meaningful evaluation as to his particular circumstances, including whether he posed a flight risk or a danger to the community. On information and belief, Respondents did not have any warrant to arrest Mr. Martinez Canales. Nor did they have cause to do so. In 2019, when he was seventeen, ORR released Mr. Martinez Canales upon a finding that his family member was sufficiently vetted and that he was not a danger to himself or others. *See R.A.R.R.*, 2026 WL 323040, at *4 ("Respondents have provided no legal or factual argument to displace or alter ORR's prior determination that [p]etitioner presents neither a danger to the community nor a flight risk."). Since then, Mr. Martinez Canales has complied with his immigration proceedings and has worked hard and contributed to his community.

70. With respect to the Government's interest, Respondents have not articulated any individualized purpose for Mr. Martinez Canales's detention. *Zadvydas*, 533 U.S. at 690–91.

71. To the contrary, given ICE's view that Mr. Martinez Canales's detention was mandatory, an individualized assessment of the factors in his case was not made prior to his detention. *See Lopez Benitez*, 795 F. Supp. 3d at 495 ("The problem is that Respondents have not offered any explanation for Mr. Lopez Benitez's detention other than their initial assertion that it is mandatory—that is, that it is *non-discretionary.* Such an assertion is precisely the *opposite* of an exercise of discretion, which entails some sort of judgment."); *see also Crespo Tacuri*, 2026 WL 35569, at *7 ("[S]ince the Immigration Judge found petitioner was detained under 1225(b)(2)(A), he did not conduct an individualized assessment because under 1225, detention is mandatory.").

72. Here, immediate release is appropriate because Respondents have not—and cannot—show that they conducted an individualized determination regarding Mr. Martinez Canales before his summary arrest. Respondents' initial reliance on § 1225(b)(2)'s mandatory detention provision necessarily establishes that they failed to evaluate whether Mr. Martinez Canales's circumstances would otherwise warrant detention under § 1226(a), which provides the sole authority for detaining individuals like him residing in the United States. And the moment Respondents detained Mr. Martinez Canales without first determining that he posed a flight risk or danger to the community, they violated his due process rights. *See, e.g., Gopie*, 2025 WL 3637500, at *1–2.

73. Even if Respondents were to provide Mr. Martinez Canales with an individualized custody determination or a bond hearing now, under the theory that he is detained under their

22

§ 1226(a) authority, that would not remedy the initial statutory and due process violations inherent in his March 2026 warrantless arrest and subsequent mandatory detention. The statute and regulations require arrests pursuant to a warrant. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(b); 1236.1(b). The regulations also require an initial custody determination prior to or contemporaneous with the arrest. 8 C.F.R. §§ 236.1(c)(8); 1236.1(c)(8). "Respondents cannot 'cure' their procedural failures—the failure to comply with the procedural requirements of § 1226(a)—by now providing a custody determination." *Inestroza Carbajal*, 2026 WL 1309265, at *2; *Singh*, 2026 WL 1239057, at *4; *Pastrana-Beltran*, 2026 WL 1398609, at *2 ("section 1226(a) affords [petitioner] an initial custody determination *before* exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk.").

74. Moreover, as the *Inestroza Carbajal* court found, "an after-the-fact custody determination at an arbitrary point in time, after the deprivation has already occurred," presents a high risk of erroneous deprivation of liberty and therefore violates due process. *Inestroza Carbajal*, 2026 WL 1309265, at *3 (citing *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 295 (S.D.N.Y. 2025)).

75. Thus, courts in this district have found that immediate release is the proper remedy for "unlawful executive detention"—even where Respondents now concede that § 1226(a) applies and the noncitizen could, in theory, request a bond hearing before an IJ. *Singh*, 2026 WL 1239057, at *4 (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)); *Inestroza Carbajal*, 2026 WL 1309265, at *5; *Pastrana-Beltran*, 2026 WL 1398609, at *3; *Alvarado Rodriguez v. Maldonado*, No. 26-CV-2669, 2026 WL 1250601, at *1–2 (E.D.N.Y. May 6,

23

2026); *Lin v. Genalo*, No. 2:26-CV-2409 (PKC), 2026 WL 1352428, at *1 (E.D.N.Y. May 1, 2026); *Flores Garcia v. ICE*, No. 26-CV-02561 (NCM), 2026 WL 1194715, at *2 (E.D.N.Y. May 1, 2026); *El Moctar v. Francis*, No. 26-CV-02453 (OEM), 2026 WL 1170755, at *3 (E.D.N.Y. Apr. 29, 2026).

76. Immediate release, rather than a bond hearing, is also the proper remedy in light of mounting evidence that bond hearings before IJs are constitutionally inadequate. *See, e.g.*, *Garcia Ortiz v. Henkey*, No. 1:26-CV-00043-BLW, 2026 WL 948275, at *2 (D. Idaho Apr. 7, 2026) ("Unfortunately, across the country the integrity of these bond proceedings has now been cast sharply into doubt."); *Pal v. Lyons*, No. 26-CV-1102-WJM, 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026) (describing "mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes"); *see also, e.g.*, *Quiroz Zacarias v. Mullin*, No. 26-CV-0574-WJM, 2026 WL 1092162, at *5 (D. Colo. Apr. 22, 2026) ("requiring [petitioner] to undergo yet another sham bond hearing . . . would only add further insult to the constitutional injury to which [p]etitioner has already been subjected."); *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6–7 (S.D. Cal. Apr. 16, 2026) (granting immediate release based on petitioner's second habeas petition, because the IJ conducting the bond hearing following his first habeas petition failed to consider the relevant factors and denied bond without sufficient reasoning); *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *5 (D.N.J. Mar. 23, 2026) ("From the moment the hearing began, it was evident that the bond hearing was not conducted in accordance with this Court's Order and was fundamentally unfair."); Politico, *Judges Keep Ordering Immigration Hearings—But Say the Results Are often a Sham* (March 6, 2026),

24

https://www.politico.com/news/2026/03/06/immigration-case-hearings-judges-00815660;

Washington Post, *Trump Officials Hire "Deportation Judges" with Less Training, Experience* (April 27, 2026), https://www.washingtonpost.com/immigration/2026/04/27/justice-department-immigration-judges-deportation/ (former IJs describing "fear Trump is forcing out judges who rule against the government and replacing them with loyalists and others being pressure to help carry out a single goal: Deport immigrants."); Associated Press, *Justice Department Targets Slow Immigration Judges as Trump Pushes Faster Deportations* (May 6, 2026), https://apnews.com/article/immigration-blanche-doj-trump-judges-backlog-deportations-daa36a2e3b0c7b26115bafcae04817c6 (Acting Attorney General Blanche stating that the Department of Justice will "watch" IJs and "[if] there's judges that are just not applying the law in the way that it needs to be applied," they will be replaced).

### III. In the Alternative, Mr. Martinez Canales Must Be Afforded a Bond Hearing at Which the Governments Bears the Burden of Establishing Dangerousness and Flight Risk by Clear and Convincing Evidence,

77. Although immediate release is the only remedy that can adequately address the severe violation of due process rights in this case, *see, e.g.*, *Inestroza Carbajal*, 2026 WL 1309265, at *5, should the Court choose not to grant such release, Mr. Martinez Canales requests that the Court order that he be provided with an individualized bond hearing at which the Government "bear[s] the burden of demonstrating, by clear and convincing evidence, that [he] is a danger to the community and a risk of flight." *Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *4 (S.D.N.Y. May 15, 2019), *aff'd*, 978 F.3d 842 (2d Cir. 2020).

78. Both the INA and due process require that the burden be allocated in this manner.

25

   **A.**  **Congress Did Not Intend for People Subjected to Immigration Detention to Bear the Burden of Proof in Bond Proceedings.**

79. Although § 1226(a) is silent as to which party carries the burden of proof, the statutory context and legislative history of the provision demonstrates that DHS properly bears the burden of justifying a noncitizen's continued detention. If Congress intended that noncitizens carry the burden of proof in bond hearings pursuant to § 1226(a), it would have expressly said so—as it did in another subsection of § 1226. *See* § 1226(c)(2) ("The Attorney General may release [a noncitizen]" subject to mandatory detention if release is (1) "necessary to provide protection to a witness" and (2) "the [noncitizen] satisfies the Attorney General that the alien will not pose a danger to the safety of other person or of property and is likely to appear for any scheduled proceedings").

80. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nken v. Holder*, 556 U.S. 418, 430 (2009) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)). This is "particularly true" when Congress enacts statutes "as part of a unified overhaul" of the prior law. *Id.* at 430–31. Congress enacted all of § 1226 at the same time, in 1996. *See Demore*, 538 U.S. at 521 (describing "wholesale reform" of immigration laws as including enactment of § 1226). While § 1226(a) is silent with respect to the burden of proof, § 1226(c)(2) squarely places the burden on noncitizens to establish that their release is proper. Congress's failure to expressly require noncitizens to carry the burden of proof under § 1226(a) when it overhauled the INA indicates that placing the burden on the noncitizen contravenes congressional intent.

26

81. Further, maxims of statutory construction dictate that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). That canon applies here: in replacing 8 U.S.C. § 1252(a)(1) with § 1226(a), Congress made no meaningful changes to the language of the original statute and thus preserved the presumption against detention that existed at the time. *See Matter of Patel*, 15 I&N Dec. 666, 666 (BIA 1976) (a noncitizen "generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security . . . or that he is a poor bail risk").

82. Former 8 U.S.C. § 1252(a)(1)[3] governed the detention of deportable immigrants prior to § 1226(a). Before the enactment of § 1226 and while § 1252(a)(1) was in effect, the BIA routinely held that noncitizens detained pursuant to § 1252(a) benefited from a presumption against detention during immigration proceedings. *See Patel*, 15 I&N Dec. at 666. The BIA maintained this presumption in several precedential decisions after *Patel*. *See, e.g.*, *Matter of Andrade*, 19 I&N Dec. 488, 489–90 (BIA 1987); *Matter of Spiliopoulos*, 16 I&N Dec. 561, 563 (BIA 1978).

83. When Congress preserved the language of former § 1252(a)(1) in re-enacting it as § 1226(a), it presumably adopted the BIA's "administrative [] interpretation" of the statute

---

[3] Former 8 U.S.C. § 1252(a)(1) read: "Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole." Immigration and Nationality Act of 1952, Pub. L. No. 414, § 242(a), 66 Stat. 208, 209 (1952).

and thereby *Patel*'s presumption against detention during removal proceedings. *Lorillard*, 434 U.S. at 580. Notably, both statutes are silent with respect to the burden of proof. *Compare* former § 1252(a)(1) *with* § 1226(a).

84. As such, any contention that Mr. Martinez Canales bear the burden of proof in a bond redetermination hearing pursuant to § 1226(a) is contrary to the statute.

> **B. Due Process Requires that Mr. Martinez Canales Receive a Bond Hearing Where the Government Bears the Burden of Proof by Clear and Convincing Evidence.**

85. When the government seeks to use its weighty power to confine a person, due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted).

86. As repeatedly recognized by courts in this Circuit, the government must bear the burden of proof by clear and convincing evidence for a bond hearing to be constitutionally adequate, regardless of the length of detention. In *Velasco Lopez,* the Second Circuit applied a *Mathews* analysis to conclude that due process requires placing the burden on the government in a §1226(a) bond redetermination hearing for a petitioner whose detention had become prolonged. 979 F.3d at 851, 854–55 (first citing *Mathews,* 424 U.S. at 319, and then determining that due process required the government to bear the burden by clear and convincing evidence to justify detention). Since then, courts in this Circuit have consistently held that due process requires the government to bear the burden of proof. *See*, e.g., *Arana v. Decker*, No. 20-CV-4104 (LTS), 2020 WL 7342833, at *9 (S.D.N.Y. Dec. 14, 2020) (granting the writ and ordering a burden-shifted bond hearing to

a petitioner detained for nine months after individualized analysis guided by the framework of *Velasco Lopez*); *Guerrero v. Decker*, 19-CV-11644 (KPF), 2020 WL 1244124, at *5 (S.D.N.Y. Mar. 16, 2020) ("'[I]n accordance with every court to have decided this issue,' . . . the Court concludes that due process requires the Government to bear the burden of proving that detention is justified at a bond hearing under § 1226(a)." (quoting *Linares Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *5 (Oct. 17, 2018))).

87.  District courts that have considered the procedural protections required at the initial bond hearing have continued to require the burden to be on the government at all § 1226(a) custody hearings, regardless of the length of detention. *J.C.G. v. Genalo,* No. 1:24-CV-08755 (JLR), 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (joining the numerous courts in this district to conclude that "the Fifth Amendment Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that such detention is justified.") (internal quotation marks omitted); *Reyes v. King*, No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at *7 & n.7 (S.D.N.Y. Aug. 20, 2021) (same); *Banegas v. Decker*, No. 21-CV-2359 (VEC), 2021 WL 1852000, at *3 (S.D.N.Y. May 7, 2021) (same); *Jimenez v. Decker,* No. 21-CV-880 (VSB), 2021 WL 826752, at *8, *11 (S.D.N.Y. Mar. 3, 2021) (rejecting the government's argument that *Velasco Lopez* only authorized shifting the burden with prolonged detention and applying the *Mathews* factors); *Quintanilla*, 2021 WL 707062, at *3.

88.  This consensus approach aligns with the Second Circuit's analysis in *Velasco Lopez*, which affirmed that longstanding Supreme Court precedents in other civil confinement contexts apply with equal force in the immigration context. 978 F. 3d at 856; *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 37–38 (1st Cir. 2021). These precedents underscore that civil

29

detention must be carefully limited and connected to a non-punitive purpose to avoid due process concerns. *See, e.g.*, *Cooper v. Oklahoma*, 517 U.S. 348, 363–64 (1996); *Kansas v. Hendricks*, 521 U.S. 346, 368 (1997);  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Addington v. Texas*, 441 U.S. 418, 425–27 (1979); *see also Salerno*, 481 U.S. at 755.

89. Supreme Court and Second Circuit precedent further instruct that, given the gravity of the liberty deprivation when the government preventively detains individuals, due process requires the jailers to establish the necessity of that detention—not the person detained. *See, e.g.*, *Salerno*, 481 U.S. at 751 (affirming legality of pretrial detention where burden of proof was on the government); *see also Foucha*, 504 U.S. at 81–82, 86 (holding unconstitutional a state civil insanity detention "statute plac[ing] the burden on the detainee to prove that he is not dangerous"). That interest in liberty is strong even at the outset of detention: "[I]t is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Velasco Lopez*, 978 F.3d at 851 (quoting *Jones v. United States*, 463 U.S. 354, 361 (1983)); *United States v. Comstock*, 560 U.S. 126, 129–31 (2010) (holding that the clear and convincing standard applies under a federal statute which permits a continued confinement of a "mentally ill, sexually dangerous" prisoner beyond a date that the prisoner would otherwise be released, from the outset of that continued detention period). Even when the Supreme Court upheld the constitutionality of categorical detention for certain noncitizens with criminal convictions, it relied on those individuals having received "the *full procedural protections* our criminal justice system offers," *Demore*, 538 U.S. at 513 (emphasis added); on Congress considering specific studies regarding its legislative choice, *id.* at 518–21; and on the

relatively short duration of detention it anticipated, *id.* at 529. None of those circumstances are applicable to the discretionary, potentially indefinite detention at issue here. *See Velasco Lopez*, 978 F.3d at 850 n.7, 852; *Hernandez-Lara*, 10 F.4th at 35–36.

90. And these precedents finally hold that, in contrast to the preponderance-of-the-evidence standard in most civil proceedings, the government must be held to a clear and convincing standard of proof when an individual's liberty is at stake. *Velasco Lopez*, 978 F.3d at 856 n.15 ("When someone stands to lose an interest more substantial than money, we protect that interest by holding the Government to a higher standard of proof." (quoting *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 213–14 (3d Cir. 2020))); *see Cooper*, 517 U.S. at 363; *Foucha,* 504 U.S. at 81. In cases in which the individual's interest is of "such weight and gravity," it is improper to ask an individual to "share equally with society the risk of error." *Addington*, 441 U.S. at 427. Immigration detention implicates "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851.

### C. Petitioner's Bond Hearing Must Have Further Procedural Protections to Satisfy Due Process.

91. The Due Process Clause requires that detention "bear a reasonable relation to its purpose." *Zadvydas*, 533 U.S. at 690; *see also Velasco Lopez*, 978 F.3d at 854–55 (holding that the only legitimate purposes for immigration detention are to protect community safety and to ensure that noncitizens attend future hearings); *Hernandez-Lara*, 10 F.4th at 32 n.5 (same). To satisfy this requirement, a bond hearing must include additional procedural protections, specifically consideration of an individual's ability to pay and alternative conditions of release.

31

92. The weight of authority of district courts in this Circuit holds that due process requires considering an individual's ability to pay and alternative conditions of release when setting a bond. *See O.F.C. v. Decker*, No. 22 CIV. 2255 (JPC), 2022 WL 4448728, at *10 (S.D.N.Y. Sept. 12, 2022) ("[C]ourts in this District overwhelmingly agree that IJs must consider these two factors—alternatives to imprisonment and ability to pay— when determining bond for a detained immigrant.") (collecting cases); *Roman v. Decker*, No. 20-CV-6752 (AJN), 2020 WL 5743522, at *4 (S.D.N.Y. Sept. 25, 2020) ("Requiring that the adjudicator consider alternative conditions of release and the detainee's ability to pay in setting bond . . . ensures that detention is not imposed arbitrarily."); *see also Rodriguez Sanchez v. Decker*, 431 F. Supp. 3d 310, 317 (S.D.N.Y. 2019) (collecting cases); *Arana*, 2020 WL 7342833, at *8; *Hernandez-Aviles v. Decker*, No. 20 CIV. 7636 (ER), 2020 WL 5836519, at *2–3 (S.D.N.Y. Oct. 1, 2020); *Fernandez Aguirre v. Barr*, 19-CV-7048 (VEC), 2019 WL 3889800, at *2–3 (S.D.N.Y. Aug. 19, 2019); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *12 (S.D.N.Y July 25, 2018); *D.C. v. Noem*, No. 26 CIV. 1833 (PAE), --- F. Supp. 3d ---, 2026 WL 787895, at *12 (S.D.N.Y. Mar. 20, 2026); *Castro Coneo v. Almodovar*, No. 25-CV-09850 (NSR), 2025 WL 3754079, at *6 (S.D.N.Y. Dec. 29, 2025); *G.F.F. v. Francis*, No. 25-CV-7368 (JGK), 2025 WL 3141735, at *6 (S.D.N.Y. Nov. 10, 2025); *L.G.M. v. LaRocco*, No. 25-CV-2631 (PKC), 2025 WL 2173577, at *3–4 (E.D.N.Y. July 31, 2025).

93. If the noncitizen's ability to pay is not considered after they have been deemed eligible for bond, they will continue to be detained not for a legitimate purpose but solely due to their indigency, accomplishing "little more than punishing a person for his poverty." *Hernandez*

32

*v. Sessions*, 872 F.3d 976, 992 (9th Cir. 2017) (quoting *Bearden v. Georgia*, 461 U.S. 660, 671 (1983)).

94. Similarly, if the government is able to protect its regulatory interests through less restrictive means, detention is no longer reasonably related to a legitimate purpose. *See Salerno*, 481 U.S. at 755 (approving a pretrial detention statute that required the government to show that no conditions of release could satisfy its interests); *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Hernandez*, 872 F.3d at 991. Where an alternative condition of release would reasonably safeguard the government's interest, the government has no legitimate interest in detaining that person. *See Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 231 (W.D.N.Y. 2019) ("[T]he determination of whether detention was 'necessary to serve a compelling regulatory purpose' necessarily required the decisionmaker to consider whether 'a less restrictive alternative to detention' would suffice."). Accordingly, due process requires that the government, in order to meet their burden of justifying detention, show why no alternative short of detention would suffice to protect their interests, and the immigration judge in turn must consider those alternatives. *See Hernandez*, 872 F.3d at 991 (noting that such programs were empirically highly effective at ensuring court appearances).

95. Finally, should an IJ grant bond, the Court should enjoin Respondents from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2). "Multiple district courts" have found that the automatic stay creates a "significant risk of erroneous deprivation ... because the only detainees subject to the automatic stay are those whose detention an IJ has already determined to be unsupported by sufficient evidence." *J.M.P.*, 807 F. Supp. 3d at 291 (collecting cases). Moreover, the use of the automatic stay is "effectively a unilateral

33

automatic stay pending appeal as of right afforded to the losing party," and by "conferring unreviewable discretionary authority in the [ ] prosecuting agency official," it "creates a conflict of interest . . . that makes erroneous deprivation not just a risk, but likely." *Id.* at 292 (quoting *Herrera v. Knight*, 798 F. Supp. 3d 1184, 1201 (D. Nev. 2025). The automatic stay provision also violates procedural due process because it allows the noncitizen detainee no opportunity to respond; it is not individualized; and because it effectively allows the prosecuting agency to override the IJ's decision, ignoring the burden of proof and any procedural protections the IJ must consider. *Id.* at 292–93.

96.  In light of the strong interest that Mr. Martinez Canales has in his liberty, the Constitution requires adequate procedural protections—namely the consideration of his ability to pay and alternative conditions of release, and enjoining the use of the autostay—prior to depriving him of his freedom.

## CLAIMS FOR RELIEF

## COUNT ONE

**STATUTORY VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT,
8   U.S.C. § 1226(a) and Implementing Regulations**

97.  Petitioner realleges and incorporates by reference each and every allegation contained above.

98.  Respondents detained Petitioner pursuant to 8 U.S.C. § 1225(b)(2), their mandatory detention authority. Respondents are continuing to detain him, despite controlling Circuit precedent that such mandatory detention is unlawful. *Barbosa da Cunha*, 2026 WL 1146044, at *5.

99.  At the time of his arrest and detention by Respondents, Petitioner was not seeking admission to the United States. He was already residing in the United States.

34

100. Section 1226 governs the detention of individuals residing within the United States, like Petitioner, and implements a discretionary detention regime with the opportunity for release.

101. Because Petitioner's detention should be governed by Section 1226, the application of the mandatory detention statute, 8 U.S.C. §1225(b), to Petitioner is unlawful under the Immigration and Nationality Act.

## COUNT TWO

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION
**(Procedural Due Process: Failure to Conduct an Individualized Pre-Detention Assessment)**

102. Petitioner realleges and incorporates by reference each and every allegation contained above.

103. For the foregoing reasons, Respondents' detention of Petitioner violates the rights guaranteed to him by the Due Process Clause of the Fifth Amendment to the United States Constitution.

104. ICE provided no individualized assessment when they detained him.

105. As multiple courts have held, no amount of post-deprivation process can cure the foregoing violation, and Petitioner should be released.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

    a. Declare that Petitioner's detention violates the Immigration and Nationality Act;

    b. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

35

c. Grant a writ of habeas corpus ordering Respondents to immediately and unconditionally release Petitioner from custody, or at minimum, order a bond hearing with the burden on the government to justify detention by clear and convincing evidence, where the immigration judge must consider alternatives to detention and Petitioner's ability to pay any bond, and enjoin Respondents from invoking the automatic stay of any grant of bond;

d. Return all of Petitioner's belongings, documents, and paperwork in their possession;

e. In the alternative, issue an order to show cause directing the government to respond to this Petition within three (3) days, and hold a hearing within eight (8) days, pursuant to 28 U.S.C. § 2243;

f. Enjoin Petitioner's transfer outside of this district during the pendency of these proceedings, and order a stay of removal to retain the Court's jurisdiction while these proceedings are pending;

g. Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

h. Grant such further relief as this Court deems just and proper.

Dated: May 22, 2026
New York, NY                                  Respectfully submitted,

                                              /s/ Edith Sangüeza
                                              Edith Sangüeza
                                              Nhu-Y Ngo
                                              The Bronx Defenders
                                              360 East 161st Street
                                              Bronx, New York, 10451
                                              Ph. 929-358-1733
                                              esangueza@bronxdefenders.org

                                              *Counsel for Petitioner*

36

**Exhibits**

    A.  Online Detainee Locator

    B.  Notice to Appear

## <u>VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242</u>

I am submitting this verification on behalf of the Petitioner because I am Petitioner's attorney. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: May 22, 2026                 <u>/s/ Sarah Butterfield</u>
                                     Sarah Butterfield